## Miller v. Commonwealth.

### Feb. 27, 1945.

W. L. Hammond for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear and Elmer Drake, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellant, Charlie Miller, was convicted of the crime of rape committed upon Opal Mae Holden, a child under the age of twelve years. His punishment was fixed at life imprisonment in the State Reformatory. Noah Miller, his companion on the evening the crime was committed, was indicted for aiding and abetting appellant in the commission of the crime.

Appellant's demurrer to the indictment was overruled, to which ruling he excepted. The indictment reads:

"Knox Circuit Court
"February Term, 1944

"The Commonwealth of Kentucky against Charles Miller. Indictment.

"The Grand Jury of Knox County, in the name and by the authority of the Commonwealth of Kentucky, accuse Charles Miller .of the offense of Rape upon a child under the age of twelve years.

"Committed in manner and form as follows: viz. the said Charley Miller on the 6th day of February, 1944, before the finding of this indictment and in the County and State aforesaid; did unlawfully, willfully, forcibly and feloniously aiding, abetting and assisting the said Charley Miller in the said crime as set out above, and the defendant Noah Miller being a male person of and above the age of twenty one years, and all of which was against the will and without the consent of the said Opal Mae Holden. Contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky.

"Witnesses for Commonwealth:

"Opal Mae Holden, Rubie Gambrell,
"Dr. Stacy, Pineville
"Dr. Wilson, Pineville

"J. C. Bird
"Commonwealth's Attorney
"34th Judicial District of Kentucky."

The indictment is so palpably faulty that we scarcely know where to commence our criticism. In the accusatory paragraph, it charges Charles Miller with having committed the offense of rape upon a child under the age of twelve years. The descriptive para-

graph charges him with aiding, abetting, and assisting himself in the commission of the crime. It then states that Noah Miller, his accomplice, is above the age of twenty-one years; and states that the crime was committed against the will and consent of Opal Mae Holden, without indicating that Opal Mae Holden was the victim of the crime. All in all, the description of the manner in which the crime was committed describes nothing. The Court should have sustained the demurrer, for which reason alone the judgment must be reversed.

Appellant's accomplice, Noah Miller, testified for the Commonwealth. The Court did not instruct the jury concerning the weight to be accorded an accomplice's testimony, in accordance with Section 241 of the Criminal Code of Practice. On the next trial, the Court will give the usual instruction under this section of the Code.

The complaint that the verdict of the jury was contrary to the evidence is without merit. Appellant admitted he was with the Holden girl, Rubie Gambrell, and Noah Miller, on the night the crime was committed. The men furnished the girls with a half-pint of whisky, which they drank. Miss Holden quickly succumbed to the influence of the liquor and became unconscious; while in that state, the crime was committed. She does not know who committed the crime; but when she became unconscious she was in the presence of appellant and his accomplice. Two doctors, who examined her on the first and second days following the commission of the crime, testified that upon their examination they discovered a tear about one inch long at the entrance of the vagina; there was blood present, and dry blood and fresh blood on her underclothes. In the opinion of the doctors, her vagina had been penetrated. Noah Miller testified as to his, appellant's, Miss Holden's, and Miss Gambrell's actions leading up to the commission of the crime; and stated that he parked the car in which they were riding near the mouth of Stinking Creek Road in Knox County; that he left the car, in order that appellant could have sexual intercourse with "this little Holden girl". He was asked the following questions and made the following answers:

"Q. When you got down there did anybody leave the car? A. I did.

"Q. Who did you leave in the car? A. Ruby Gambrell and that Holden kid and Charlie Miller.

\* \* \* \* \*

"Q. How far from the car did you go? A. I guess 150 yards.

"Q. How long did you stay away? A. About twenty-five minutes.

"Q. Why did you leave the car? A. So Charlie Miller could have sexual intercourse with this little Holden girl.

"Q. How did you know he intended to have intercourse with the little Holden girl? A. I was sitting in the front seat, and he says 'Are you going to have anything to do with her' in profane language, and I said 'No.'

"Q. Did he ask you if you were going to have intercourse? A. Yes, when I was sitting in the front wheel and I said 'No,' and he said 'I am.' He gets in the front seat with me and the kid and I got out of the car.

"Q. What position was the Holden girl in when you got out of the car and he got in the front seat, where was she? A. She was sitting up then.

"Q. Did you hear or see anything before you got out of the car and as you left the car between Charlie and this girl? What (did) he say or do? A. He just started to unstrip her clothes as I got out of the car.

"Q. Did you see him do that? A. It was pretty well dark in the car but you could see him putting his hands on her body. Just a bulk.

"Q. Did you hear her do or say anything? A. As I left the car, ten or fifteen yards from the car, I heard the girl start crying and I kept walking.

"Q. How long did she keep that up? A. She was crying when I got out of hearing distance. I walked 150 yards and when I came back to the car she was still in the car.

"Q. Where was she when you got back in the car? A. Laying in the front seat of the car.

"Q. Anybody else in the front seat with her? A. Charlie was.

"Q. What condition was she in with reference to her clothes when you got back? A. Up around her waist.

"Q. Her body exposed? A. Yes, but it was dark and you could see no more than her clothes up above her waist.

"Q. Anybody pull them clothes down after you got in the car? A. I did. Charlie got in the back seat."

This testimony was corroborated by the testimony of the victim that appellant, at the point of a gun, forced her and the Gambrell girl to get in his automobile, which Noah Miller was driving; refused to let them get out, although they persistently tried to do so; forced them to drink the whisky; was in her presence when she succumbed to its influence; that while unconscious she was raped; that when she regained consciousness there was blood on her clothes and on her body, and her "bloomers" were missing; that there was soreness in. the region of her sexual organs. The accomplice's testimony was further corroborated by the testimony of appellant, who admitted being with the victim until a very short while before the crime was committed. Appellant introduced testimony strongly supporting his contention that Noah Miller actually committed the crime; but this testimony merely conflicted with the evidence introduced by the Commonwealth, and raised an issue for the determination. of the jury. It is obvious the evidence was sufficient to sustain the conviction.

The judgment is reversed, for the reason hereinbefore indicated, with directions that appellant be granted a new trial, to be conducted in conformity with this opinion.

Whole Court sitting.